UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAROL C.,

                              Plaintiff,

v.                                                    8:21-cv-00862 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

SCHNEIDER & PALCSIK                           MARK A. SCHNEIDER, ESQ.
  *Counsel for Plaintiff*
57 Court Street
Plattsburgh, NY 12901

SOCIAL SECURITY ADMINISTRATION                HUGH DUN RAPPAPORT, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, MD 21235

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Carol C. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for disability insurance benefits ("DIB").  (Dkt. No.

1.)  Pursuant to 28 U.S.C. § 636(c), the parties consented to the disposition of this case by a

Magistrate Judge.  (Dkt. Nos. 4, 5.)  Both parties filed briefs, which the Court treats as cross-

motions for judgment on the pleadings under Federal Rule of Civil Procedure Rule 12(c) in

accordance with General Order 18.  (Dkt. Nos. 18, 21.)  For the reasons discussed below,

Plaintiff's motion is denied, and Defendant's motion is granted.  The Commissioner's decision is affirmed.

## I.      BACKGROUND

Plaintiff was born in 1962, has a high school diploma, and two years of college. (Administrative Transcript at 105, 203, 217, 512-13.[1])  She has some prior work experience as an "administrative assistant" and "intake clerk."  *Id*. at 112.

On March 14, 2016, Plaintiff filed an application for DIB, alleging disability beginning April 2, 2014, due to post-traumatic stress disorder ("PTSD"), depression, and anxiety.  *Id*. at 203-04, 220.  On July 8, 2016, her application was denied, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  *Id*. at 134, 150.  On January 30, 2018, Plaintiff, represented by counsel, appeared before ALJ David F. Neumann.  *Id*. at 100-15.  On March 22, 2018, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  *Id*. at 11-22.  On May 21, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  *Id*. at 1-7. Thereafter, Plaintiff timely sought judicial review in this Court.  *Id*. at 592-94.

On January 7, 2020, pursuant to the parties' stipulation to remand Plaintiff's case for further proceedings, the matter was remanded by the District Court to the Social Security Administration.  *Id*. at 595-98.  On February 7, 2020, the Appeals Council remanded the claims to an ALJ to update the record as needed, further evaluate the opinion evidence, further consider

---

[1]  The Administrative Transcript is found at Dkt. No. 15.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system. Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

Plaintiff's residual functional capacity ("RFC"), and, if necessary, obtain further evidence from a medical expert and vocational expert ("VE").  *Id*. at 601-03.

On April 27, 2021, ALJ Neumann conducted a hearing where Plaintiff, represented by counsel, a psychiatrist, and a VE testified.  *Id*. at 488-565.  On July 27, 2021, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act from October 19, 2015, the amended date of disability, through December 31, 2019, the date Plaintiff was last insured.  *Id*. at 465-79.  On July 30, 2021, Plaintiff timely commenced this action.  (Dkt. No. 1.)

## II.    LEGAL STANDARDS

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, a court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.      Determination of Disability[2]

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under the five-step sequential evaluation process, the ALJ determines:

---

[2] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

>    (1) whether the claimant is currently engaged in substantial gainful
>    activity; (2) whether the claimant has a severe impairment or
>    combination of impairments; (3) whether the impairment meets or
>    equals the severity of the specified impairments in the Listing of
>    Impairments; (4) based on a "residual functional capacity"
>    assessment, whether the claimant can perform any of his or her
>    past relevant work despite the impairment; and (5) whether there
>    are significant numbers of jobs in the national economy that the
>    claimant can perform given the claimant's residual functional
>    capacity, age, education, and work experience.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.    THE ALJ'S DECISION

After reviewing the procedural history of Plaintiff's applications and stating the

applicable law, the ALJ found she met the insured status requirements through December 31,

2019, and had not engaged in substantial gainful activity from her amended onset date of

October 19, 2015, through the last date insured. (T. at 467-68.) At step two, the ALJ determined

Plaintiff has the following severe impairments:

>    major depressive disorder, anxiety disorder, posttraumatic stress
>    disorder (PTSD), cannabis use disorder, and asthma/chronic
>    obstructive pulmonary disease (COPD).

*Id*. at 468.

At step three, the ALJ found Plaintiff's impairments either singly or in combination did

not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (the "listings"). *Id*. at 468-69. Specifically, the ALJ considered listings 3.03

(asthma), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-

compulsive disorders), and 12.15 (trauma-and stressor-related disorders). *Id*.

Next, the ALJ determined Plaintiff, with her cannabis use disorder, had the RFC through the date last insured to perform a full range of work at all exertional levels except she:

> was limited to performing simple, routine, repetitive tasks commensurate with work at an SVP of 1 or 2, was limited to only occasional interaction with supervisors, co-workers, and the public, could tolerate no more than occasional changes in the work setting, had to avoid concentrated pollutants and temperature extremes, and would be expected to be off task for at least 20% of a standard 8 hour workday due to the effects of her cannabis use.

*Id*. at 469. Absent her cannabis use disorder, the ALJ determined Plaintiff had the RFC through the date last insured to perform a full range of work at all exertional levels except she:

> was limited to performing simple, routine, repetitive tasks commensurate with work at an SVP of 1 or 2, was limited to only occasional interaction with supervisors, co-workers, and the public, could tolerate no more than occasional changes in the work setting, and had to avoid concentrated pollutants and temperature extremes.

*Id*. at 475. The ALJ went on to note: "when I do not consider her marijuana use, the result is the above second residual functional capacity, which excludes the off-task limitation but includes all of the other limitations set forth in the first residual functional capacity." *Id*. at 475-76.

At steps four and five of the sequential evaluation, based upon the RFC absent cannabis use, the Medical Vocational Guidelines, and the testimony of the VE, the ALJ determined Plaintiff was unable to perform any past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. *Id*. at 477-79.

Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the Social Security Act, from October 19, 2015, the amended alleged onset date, through the last date insured of December 31, 2019. *Id*. at 479.

**IV.    ARGUMENTS**

Plaintiff argues the ALJ failed to find her *per se* disabled under listings 12.04, 12.06, and 12.15 and improperly assessed the medical opinions of the examining and treating sources.  (Dkt. No. 18 at 17-32.)  Plaintiff further contends the ALJ erred in not crediting her testimony about her limitations.  *Id*. at 32-35.  Plaintiff also maintains the ALJ erred in not including limitations in the RFC regarding her obesity and her COPD, and that new and material evidence should be considered which addresses her cannabis use and credibility.  *Id*. at 35-37.  The Commissioner responds the ALJ properly evaluated the opinion evidence regarding Plaintiff's mental impairments, properly considered Plaintiff's subjective complaints, obesity and COPD, and supportably concluded she could perform work at all exertional levels with limitations for her mental impairments and COPD.  (Dkt. No. 21 at 4-25.)  The Commissioner also argues the additional evidence submitted by Plaintiff is not new or material and therefore should not be considered.  *Id*. at 25-27.

**V.    DISCUSSION**

**A.    Substantial Evidence Supports the ALJ's Step Three Determination**

**1.  Legal Standards**

At step three of the sequential evaluation, the ALJ must determine whether the individual's severe impairment meets or equals the criteria of any impairment listed in Appendix 1 of the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d); *see* 20 C.F.R. § 404 Subpt. P, App. 1.  If an individual's impairment, or combination of impairments, matches the requirements of the relevant listing, then the individual is disabled.  *Id*. §§ 404.1520(d), 416.920(d).  To meet a listing, the individual's impairment "must meet *all* of the specified

medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

Plaintiff claims she is disabled under mental health listings 12.04, 12.06, and 12.15. (Dkt. No. 18 at 17-18.)  To meet these listings, a claimant must satisfy the diagnostic criteria described in "paragraph A," as well as the "paragraph B" criteria by establishing either an extreme limitation in one, or a marked limitation in two, of the following domains of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; or (4) adapting and managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.15.

Alternatively, a claimant must satisfy the requirements of "paragraph A" and "paragraph C."  *Id*.  To meet "paragraph C" criteria, the individual must present a "medically documented history of the existence of the disorder over a period of at least 2 years," with both "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder," and "marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life."  *Id*.

### 2.  Application

As noted, Plaintiff alleges the ALJ did not properly evaluate the functional limitations of her major depressive and anxiety disorders, and her PTSD; and she conclusively states she meets the "paragraph C" criteria without explanation.  (Dkt. No. 18 at 17-18.)  As part of his step three analysis, the ALJ noted no acceptable medical source opined Plaintiff's impairments medically equaled a listed impairment.  (T. at 468-69.)  Indeed, non-examining medical expert psychiatrist Linda Miller, D.O., definitively stated Plaintiff's mental impairments did not meet the relevant

listings.  *Id.* at 548-49.  The ALJ further determined the uncontested opinions of multiple medical sources did not support a finding that Plaintiff's impairments met or equaled the criteria of any physical or mental listed impairment.  *Id.*

In determining whether she satisfied the "paragraph B" criteria, the ALJ concluded, based upon substantial evidence in the record and in the absence of the cannabis use disorder, Plaintiff has moderate limitations in understanding, remembering, and applying information; moderate limitations in interacting with others; moderate limitations in maintaining concentration, persistence, or pace; and moderate limitations in adapting or managing herself.  *Id.*  He found when including her cannabis use disorder, she had moderate difficulties in all domains, except her difficulties were marked in concentrating, persisting, or maintaining pace.  *Id*  Either way, the ALJ found Plaintiff did not meet the "paragraph B" criteria since she did not have marked limitations in two domains of functioning even considering her cannabis use.  *Id.*

Further, although the ALJ did not specifically discuss the "paragraph C" criteria, the Court does not find any error.  His discussion of Plaintiff's medical conditions, treatment findings, medical source opinions, consultants' opinions, and daily activities clearly show Plaintiff did not satisfy the "paragraph C" criteria because the record does not establish she has only marginal adjudgment.  *Id*. at 468-76.  In making these determinations, the ALJ thoroughly discussed the extensive evidence of record, and the decision must be read as a whole.  *Id*; *see, e.g.*, *Candy A. O. v. Kijakazi*, No. 20-cv-0766, 2022 WL 226804, at *5 (N.D.N.Y Jan. 26, 2022) (no error where ALJ did not specifically discuss pieces of evidence, however, he discussed objective medical and other evidence in detail throughout the decision and made clear that he considered all of the available evidence); *Jeanette J. v. Saul*, No. 19-cv-0795, 2020 WL 4932047, at *5 (N.D.N.Y. Aug. 24, 2020) (finding it proper that the decision be read as a whole).

First, a review of the ALJ's decision and the administrative record shows the ALJ relied on evidence of Plaintiff's wide range of daily activities including having no problems with self-care and grooming. (T. at 241-42, 265, 409, 470.) She reported she can prepare simple meals on a daily basis. *Id.* at 242, 265. She cleans, does laundry, walks, goes outside daily, and shops for groceries at off-peak hours. *Id.* at 243, 265. She cares for her three pet cats. *Id.* at 512-13, 1807. She can manage money, drive with others in the car, socialize on occasion with a small group of friends, attend church, read, and watch tv. *Id.* at 243-44, 265, 409. She reported attending Elizabethtown field days with a friend and was socializing and having a good time. *Id.* at 1804.

Second, the ALJ considered the opinion evidence including the report of state agency psychologist M. Marks, Ph.D., who conducted a review of Plaintiff's agency file in June of 2016. *Id.* at 120-27, 473. Dr. Marks determined Plaintiff had affective and anxiety disorders and further opined she had mild difficulties maintaining social functioning and moderate difficulties in concentrating, persisting or pace. *Id*. at 121.[3] Consequently, the ALJ considered Dr. Marks' assessment with the current "paragraph B" criteria, and determined Dr. Marks' findings did not support the level of disability required to meet the criteria. *Id.* at 468-69, 473.

Additionally, in May of 2016, Carly Mount, Ph.D., consultatively examined Plaintiff and similarly concluded Plaintiff has no more than mild to moderate work-related mental limitations. *Id*. at 410. On examination, Plaintiff was cooperative, she related adequately to Dr. Mount, she was fairly groomed and dressed casually. *Id*. at 408. She made appropriate eye contact and exhibited normal posture and motor behavior. *Id*. Plaintiff's speech was fluent, clear, and monotonous, and she demonstrated adequate expressive and receptive language skills. *Id*.

---

[3] Dr. Marks also concluded Plaintiff has a mild restriction of activities of daily living and one or two episodes of decompensation, however, as the ALJ discussed, changes to the mental listings made these functional categories obsolete. (T. at 121, 417.)

Regarding her mood, Plaintiff reported feeling anxious.  *Id*.  She appeared anxious and her affect was also dysphoric and flat.  *Id*.  However, her thought processes were coherent and goal directed; she was properly oriented in all spheres; and her sensorium was clear.  *Id*.  Her attention and concentration were mildly impaired due to emotional distress.  *Id*. at 409.  She was able to count and perform simple calculations, but she had some difficulty with serial 3s.  *Id*. Her recent and remote memory skills were mildly impaired due to emotional distress, she was able to recall three objects immediately and one after five minutes, and restate five digits forward and three digits backward.  *Id*.  Plaintiff's intellectual functioning appeared to be in the average range, and her insight and judgment were assessed as fair to poor.  *Id*.

The ALJ further considered Plaintiff's treatment records of Herbert Savel, M.D., and his assessment of the impact of her mental impairments.  *Id.* at 473, 416-17, 837-54.  Dr. Savel provided medication management for Plaintiff, including her mental health conditions, and he treated her COPD.  *Id.* at 837-54.  His records reflect Plaintiff complained of cognition problems, but his exams were unremarkable except for some shortness of breath and decreased breath sounds.  *Id.*  He counseled her to discontinue smoking and prescribed medications to assist her with that, and for her COPD, depression, and anxiety.  *Id.*  at 839-45.  In his source statement, Dr. Savel opined Plaintiff was at most moderately limited in various mental functioning areas. *Id.* at 417.

The ALJ also discussed the opinion of social worker, Megan Luckey, LMHC.  In her January 20, 2017, source statement which encompassed the relevant time period, Ms. Luckey noted no or "somewhat" evidence of limitations in most of the mental functioning areas, moderate limitations in attention/concentration, and moderate to very limited in working at a consistent pace.  *Id.* at 415.  However, she also indicated the restrictions were only expected to

last 7-11 months.  *Id.*  Thus, these limitations do not meet the necessary duration requirements.
20 C.F.R. § 404.1509 (absent the impairment being expected "[t]o result in death, it must have
lasted or must be expected to last for a continuous period of at least 12 months.").  Ms. Luckey
also submitted an additional report dated May 13, 2021, which set forth her opinion that Plaintiff
had listing level mental limitations.  (T. at 2269-76.)  However, the report does not establish
Plaintiff's mental functioning as of the last date insured, December 31, 2019, and it does not
reference it pertains to that relevant period.  Notably, attached to Ms. Luckey's said report is the
psychiatric consultation of Dov Rapoport, M.D., dated March 27, 2017, which is within the
relevant period; however, he did not countersign Ms. Luckey's May 2021 report.  *Id.* at 2276-78.
Moreover, Dr. Rapoport's mental status examination of Plaintiff showed she had an anxious
mood, but she was cooperative.  *Id.* at 2277.  Dr. Rapoport's remaining mental exam of Plaintiff
was entirely within normal limits contradicting any relevant listing, and he specifically noted her
memory and concentration were adequate, and her thought processes were goal directed,
relevant, and coherent.  *Id.*

Other relevant treatment notes prior to the last date insured repeatedly reflected Plaintiff
had largely normal clinical findings on mental status exams, including exams where she reported
anxiety, depression and/or difficulty concentrating.  *See, e.g.*, *id*. at 360, 361, 363 (Ticonderoga
Health Center/Amanda Abrams, P.A.); 390, 395, 403, 1176, 1178, 1182, 1187, 1191, 1198,
1204, 1230, 1245, 1250, 1255, 1260, 1265, 1275, 1284, 1457, 1462, 1467, 1472, 1478, 1483,
1488, 1493, 1498, 1503, 1508, 1513, 1523, 1528, 1533, 1720, 1725 (Essex County Mental
Health mini-mental status exams); 775, 780, 786, 791, 795, 801, 813, 817, 821, 825, 829, 877,
1760 (Westport Health Center/Pasquilino Caputo, M.D.); 774, 779, 795, 881 (denies anxiety and
depression Westport Health Center/Pasquilino Caputo, M.D.); 2037 (normal mental status except

impaired judgment on admission to St. Lawrence Addiction Center); 2054 (pleasant mood and stable on discharge from the St. Lawrence Addiction Center); 2187-88 (cooperative, thoughts and perceptions coherent without delusions, intact cognition and judgment, fair insight on discharge from Westchester Medical Center).  Even after the last date insured, Essex County Mental Health mini-mental status exams showed normal mental status findings.  *Id.* at 1670, 1675, 1680, 1690, 1695, 1705, 1710, 1715, 1997, 2003, 2009, 2015, 2020.  Also after the last date insured, consultative examiner Brett T. Hartman, Psy.D., reported Plaintiff's mood was anxious, agitated and labile; however, she also had appropriate eye contact, and was cooperative, well groomed, with fluent but pressured in speech; she had coherent and goal directed thought processes, clear sensorium, with mildly impaired attention and concentration and recent and remote memory skills; and she had average intellectual function with fair to poor insight and fair judgment.  *Id*. at 1745-46.

The foregoing record evidence supports the ALJ's "paragraph B" findings of moderate limitations in the various domains absent cannabis use.  *See Beau M. v. Comm'r of Soc. Sec.*, No. 8:18-cv-1170 (ATB), 2020 WL 586868, at *5 (N.D.N.Y. Feb. 6, 2020) (finding substantial evidence consisting of plaintiff's testimony, intact daily activities, observations from his physicians, and consultative examination results supported ALJ's "paragraph B" analysis of no more than moderate limitation in any domain).

Although the ALJ did not specifically discuss the "paragraph C" criteria, it is clear from the decision and the record evidence that the "paragraph C" criteria were unmet.  While Plaintiff may have had a "medically documented history of the existence of the disorder over a period of at least 2 years," 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.04(C), 12.06(C), 12.15(C), she did not exhibit the required "marginal adjustment."  As noted above, mental status exams were

largely normal, she lived independently, and she performed a wide range of activities; thus, substantial evidence shows she did not have marginal adjustment.  While Plaintiff was hospitalized for a mental health episode in late 2015 at Westchester Medical Center, on discharge she was cooperative, her thoughts and perceptions were coherent without delusions, she had intact cognition and judgment, and fair insight.  (T. at 2187-88.)  Therefore, the Court concludes that although not mentioned by the ALJ, the record evidence also shows the "paragraph C" criteria were not met, and the Court finds no error in this regard.  *Gabriel C. v. Comm'r of Soc. Sec.*, No. 6:18-cv-671 (ATB), 2019 WL 4466983, at *8 (N.D.N.Y. Sept. 18, 2019) (finding "no reasonable fact finder could have found that plaintiff had marginal adjustment" as examinations showed largely intact functioning, and he could complete daily activities, like attend college classes, drive a vehicle, "prepare simple meals, socialize with a few close friends," and "care for his cat").

Plaintiff argues she meets listings 12.04, 12.06, and 12.15 based on the record evidence and the ALJ erred in failing to use the special technique to rate the functional limitations of her mental impairments.  (Dkt. No. 18 at 17-18.)  Plaintiff's argument is largely conclusory and her briefing on this issue does not point to any specific records to support her claim.  *Id.*  Moreover, the ALJ addressed Plaintiff's mental impairment regarding work related functioning at length. (T. at 469-77.)  This discussion included an in-depth review of her functioning with and without her cannabis use disorder.  *Id.*  In short, Plaintiff has failed to offer any explanation of how the evidence supports a finding that she met the listings.  *Gilmore v. Comm'r of Soc. Sec.*, No. 7:15-cv-00837 (NAM), 2016 WL 4079535, at *5 (N.D.N.Y. July 29, 2016) (holding plaintiff did not meet a listing where she failed to point to evidence that met the claimed listing).

Accordingly, the ALJ's thorough analysis and explanation of Plaintiff's impairments at step three indicate sufficient consideration of her mental impairments in relation to the listings, and his findings are supported by substantial evidence.  As such, remand is not required on this basis.

**B.      Substantial Evidence Supports the ALJ's RFC Determination at Step Four**

**1.   Legal Standards**

A claimant's RFC is the most he or she can do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id*. (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-cv-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The regulations mandate procedures an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion.[4]  The Second Circuit has articulated the procedure as a two-part analysis.  *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  First, the ALJ must decide whether the opinion is entitled to controlling weight.  *Id*.  "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)); *see, e.g.*, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (holding "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts").

Second, if the ALJ decides the opinion is not entitled to controlling weight, he must determine how much weight, if any, to give it.  *Estrella*, 925 F.3d at 95.  In doing so, the ALJ must "explicitly consider" the following, nonexclusive "*Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).  In *Estrella*, the court emphasizes the importance of a treating source's opinion in cases concerning mental impairments, as "cycles of improvement and debilitating symptoms [of mental illness] are a

---

[4]  The agency has since adopted regulations that eliminated the treating physician rule for claims filed after March 27, 2017.  *See* 20 C.F.R. §§ 404.1527, 416.927.  Because Plaintiff filed her application on March 14, 2016, the treating physician rule applies.

common occurrence." *Estrella*, 925 F.3d at 97 (quoting *Garrison v. Colvin*, 759 F. 3d 995, 1017 (9th Cir. 2014)).

At both steps, the ALJ must give "good reasons" for the weight given to a treating physician's opinion. *Id*. at 96 (quoting *Halloran*, 362 F.3d at 32). An ALJ's failure to "explicitly" apply the *Burgess* factors when assigning weight to a treating physician's opinion is a procedural error. *Id*. (citing *Selian*, 708 F.3d at 419-20). However, if "a searching review of the record" assures the court "that the substance of the treating physician rule was not traversed," the court will nonetheless affirm. *See id*. (citing *Halloran*, 362 F.3d at 32).

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "The ALJ must 'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-cv-326, 2019 WL 667743, at \*9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the regulations.[5] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective

---

[5] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." SSR 16-3p, 81 FR at 14167. The Court will remain consistent with the terms as used by the Commissioner.

medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### 2. Medical Opinions

Plaintiff argues the RFC determination is not supported by substantial evidence because the ALJ failed to give sufficient weight to Plaintiff's treating psychiatrists, primary care physicians, therapists, and examining consultants, and by giving too much weight to the non-examining consultant and other non-medical sources. (Dkt. No. 18 at 18-24.) Plaintiff also

argues the ALJ erred by giving any weight to the opinion of a non-examining consultant, Dr. Miller. *Id.* at 24-32.

### a.  Megan Luckey, LMHC

As noted above, Ms. Luckey submitted two assessments of Plaintiff's mental limitations, one dated January 20, 2017, which was during the relevant time period, and the other dated May 13, 2021, which was after the last date insured.  (T. at 414, 2269.)  In the January 2017 assessment, Ms. Luckey noted no or "somewhat" evidence of limitations in most of the mental functioning areas, moderate limitations in attention/concentration, and moderate to very limited in working at a consistent pace.  *Id.* at 415.  However, she also indicated the restrictions were only expected to last 7-11 months, which, as noted above, does not meet the duration requirements set forth in the regulations.  *Id.*; *see also* 20 C.F.R. § 404.1509.  Thus, the ALJ noted her assessment was not necessarily in conflict with Plaintiff's limitations in maintaining a consistent pace set forth in the RFC absent cannabis use disorder.  *Id.* at 473.  The ALJ also noted that Ms. Luckey's opinion did not note Plaintiff's cannabis use disorder at all which possibly caused her concentration difficulties.  *Id.*  The ALJ agreed with Ms. Luckey that Plaintiff had marked limitations in the ability to concentrate, persist, and maintain pace when considering her substance use disorder.  *Id.* at 469, 473.  The ALJ did not err in this regard since the regulations direct the ALJ to determine whether substance use "is a contributing factor material to the determination of disability."  20 C.F.R. § 404.1535(a).  Moreover, the records of Essex County Mental Health, where Ms. Luckey provided counseling to Plaintiff, report she was not in "early full remission" until January 18, 2019, which lasted until December 31, 2019, when she was noted to be in partial remission thereafter.  (T. at 1378, 1392, 1395, 1544, 1551, 1606, 1619, 1631 (early full remission January 18, 2019, through October 1, 2019); 1335, 1349, 1352,

1365, 1543, 1546, 1554, 1567, 1580, 1593 (partial remission October 1, 2019, through December 13, 2020).)  With the exception of the cannabis use disorder discrepancy, the ALJ gave Ms. Luckey's January 2017 opinion great weight.  *Id.* at 474.

Ms. Luckey issued another opinion on May 13, 2021, opining Plaintiff had marked and extreme limitations in several areas of mental functioning.  *Id*. at 2269-75.  The ALJ noted the opinion was well after the last date insured of December 31, 2019, and it does not indicate it related back to the relevant time at issue.  *Id*. at 474, 2269-75.  Moreover, as noted, the Essex County Mental Health records show Plaintiff's cannabis use disorder was only in partial remission as of and after October 1, 2019, through the latest report dated December 31, 2020.  *Id.* at 1335, 1349, 1352, 1365, 1543, 1546, 1554, 1567, 1580, 1593.  Furthermore, while Dr. Rapoport's March 27, 2017, psychiatric consultation report was apparently appended to Ms. Luckey's May 13, 2021, source statement, her statement is not countersigned by Dr. Rapoport. Nor is there anything to indicate Ms. Luckey's May 2021 report relates to the period before December 31, 2019, the last date insured.  Thus, the Court finds no error in the ALJ's treatment of Ms. Luckey's opinions.  *See, e.g.*, *Gill v. Astrue*, No. 10-cv-985 (MAD/ATB), 2011 WL 4352410, at *12 (N.D.N.Y. Sept. 15, 2011), *rep. & rec. adopted*, 2011 WL 4352719 (N.D.N.Y. Sept. 15, 2011) (treating source report completed two years after date last insured did not address plaintiff's condition during the relevant time period).

### b.  Dov Rapoport, M.D.

Dr. Rapoport, a psychiatrist, conducted two psychiatric evaluations of Plaintiff at Essex County Mental Health Services.  (T. at 388-90, 2277-78.)  He did *not* submit an opinion of Plaintiff's mental limitations for work functions.  Nevertheless, Plaintiff argues in conclusory

fashion the ALJ erred in not giving Dr. Rapoport's findings and conclusions great weight.  (Dkt. No. 18 at 22.)

At his first encounter with Plaintiff on February 24, 2016, Dr. Rapoport diagnosed her mental conditions as "major depression, recurrent, severe.  Generalized anxiety disorder.  Rule out PTSD."  *Id.* at 390.  Her mental status examination was largely normal with the exception of her being anxious and tearful, although she calmed down as the interview progressed.  *Id.*  She also reported always being afraid.  *Id.*  Dr. Rapoport examined Plaintiff again on March 27, 2017, and again she was anxious, but her mental status examination was otherwise normal.  *Id.* at 2277.  His mental diagnostic impression was recurrent major depression, PTSD, and rule out attention deficit hyperactivity disorder ("ADHD").  *Id.* at 2278.  At both encounters, he recommended continuation of certain psychotropic medications and/or prescribed others.  *Id.* at 390, 2278.  Notably, the ALJ found Plaintiff had severe impairments of major depressive disorder, anxiety disorder, and PTSD, in accord with Dr. Rapoport's diagnostic impressions.  *Id.* at 468.  Plaintiff does not explain how Dr. Rapoport's findings would result in a more restrictive RFC or how the fact that she took psychotropic mediations related to a more restrictive RFC, and therefore the Court finds no merit in Plaintiff's argument that the ALJ erred in not giving Dr. Rapoport's findings and conclusions great weight.  *Beaman v. Comm'r of Soc. Sec.*, No. 18-cv-1344, 2020 WL 473618, at *6 (W.D.N.Y. Jan. 28, 2020) (Plaintiff has the burden to prove a more restrictive RFC than the RFC assessed by the ALJ).

### c.   Brett B. Hartman, Psy.D.

Dr. Hartman, as noted above, consultatively examined Plaintiff on January 27, 2021, well after the last date insured.  (T. at 1743-47.)  He reported Plaintiff's mood was anxious, agitated and labile; however, she also had appropriate eye contact, and was cooperative, well groomed,

with fluent but pressured speech; she had coherent and goal directed thought processes, clear

sensorium, mildly impaired attention and concentration, and mildly impaired recent and remote

memory skills; and she had average intellectual functions with fair to poor insight and fair

judgment. *Id*. at 1745-46. He opined Plaintiff had moderate-to-marked difficulty in sustaining

concentration and marked difficulties in interacting with others and regulating her emotions. *Id*.

at 1746. The ALJ found Dr. Hartman's opinion to have "minimal probative value" because it

was dated after the date last insured, and it referenced a worsening of Plaintiff's symptoms

implying Plaintiff had higher functioning during the period in question. *Id*. at 474. The ALJ also

noted Dr. Hartman's assessment was not supported by the medical evidence during the relevant

time frame, nor did other evidence, including Plaintiff's ability to do a wide range of daily

activities as previously discussed by the ALJ, support the level of impairments opined by Dr.

Hartman. *Id*. 474-75; *see, e.g.*, *id*. at 409, 1746 (daily activities); 360, 361, 363, 780, 795, 817,

829, 834 (largely normal mental status exams); 406-11 (normal findings during consultative

exam of Dr. Mount); 389 (medication providing some control of her symptoms). For these

reasons, the Court finds no error in the weight given to Dr. Hartman's opinion.

### d.   Carly Mount, Psy.D.

Plaintiff does not specifically challenge the weight the ALJ gave to Dr. Mount's opinion,

but instead argues that Dr. Mount's notation that Plaintiff made a mistake when doing serial 3s is

a strong indication of Plaintiff's moderate to severe impairments in concentration and

persistence. (Dkt. No. 18 at 23 n.22.) Dr. Mount consultatively examined Plaintiff during the

relevant time on May 13, 2016, and provided a written evaluation. (T. at 406-11.) She

concluded Plaintiff has no more than mild to moderate work-related mental limitations. *Id*. at

410. Plaintiff's mental status exam was largely unremarkable, although she had the difficulty

with serial 3s, she appeared anxious, and her affect was dysphoric and flat. *Id*. at 408-09. Dr. Mount found Plaintiff's attention and concentration, and recent and remote memory skills were mildly impaired due to emotional distress. *Id*. at 409. Plaintiff's intellectual functioning appeared to be in the average range, and her insight and judgment were assessed as fair to poor. *Id*. The case cited by Plaintiff, *Teneyck v. Colvin*, No. 1:12-cv-0308 (MAD), 2014 WL 975597, at *5 (N.D.N.Y. Mar. 12, 2014) to support her argument that difficulty with serial 3s is a strong indication of moderate to severe impairments in concentration and persistence is distinguishable from the case at hand. (*See* Dkt. No. 18 at 23 n.22.) The consultative examiner in *Teneyck* observed poor performance on serial 3s; significantly impaired attention, concentration, and recent and remote memory skills; and borderline intellectual functioning. *Teneyck*, 2014 WL 975597, at *5. Accordingly, in light of all of those findings on exam, the consultative examiner opined the plaintiff was not likely to maintain attention and concentration or maintain a regular schedule. *Id.* The *Teneyck* Court also determined the consultative examiner's report was new and material evidence that should be reviewed. *Id*. at *7. Here, Dr. Mount did *not* find Plaintiff's inability to do serial 3s indicated severe impairments, and importantly the ALJ considered her opinion. (T. at 410, 472.) Accordingly, the Court finds no issue with the ALJ's review of Dr. Mount's opinion.

### e.  Linda Miller, D.O.

Plaintiff next argues the ALJ erred in giving any weight to the opinion of the non-examining medical expert, Dr. Miller, who testified at Plaintiff's second hearing on April 27, 2021. (Dkt. No. 18 at 24-32; T. at 516-55.) Dr. Miller is board certified by the American Board of Psychiatry and Neurology, and treats mental diseases in an outpatient private practice setting including, but not limited to, mood disorders, psychotic and anxiety disorders, and substance

abuse.  T. at 516, 1771, 2056.  The ALJ found Dr. Miller's opinion that Plaintiff had no more

than moderate difficulties in any area of mental functioning in the absence of marijuana to be

credible.  *Id.* at 475-76.

Plaintiff first contends Dr. Miller's opinion should not be credited because she does not

have experience treating patients specifically with cannabis abuse.  (Dkt No. 18 at 25.)

However, Plaintiff, who was represented by counsel at the hearing, did not object to Dr. Miller

testifying at the hearing nor raise any issues with respect to her qualifications to provide opinions

on Plaintiff's mental health disorders including cannabis use disorder.  (T. at 517.)

Consequently, the Court finds no merit to this argument.  *See, e.g.*, *Guzman v. Berryhill*, No. 15-

cv-3920, 2019 WL 338713, at *22 (S.D.N.Y. June 12, 2018); *Carvey v. Astrue*, No. 06-cv-0737

(NAM/DEP), 2009 WL 3199215, at *14 (N.D.N.Y. Sept. 30, 2009) ("The failure to present an

argument to the ALJ constitutes waiver of the right to raise it on appeal."); *Williams v. Astrue*,

No. 07-cv-4134, 2008 WL 4755348, at *12 (S.D.N.Y. Oct. 27, 2008) (rejecting the plaintiff's

argument that her "depressed mood was an independent severe impairment" where "plaintiff did

not argue to the ALJ that this condition was a sufficient additional impairment"); *Harvey v.

Astrue*, No. 05-cv-1094 (NAM), 2008 WL 4517809, at *15 (N.D.N.Y. Sept. 29, 2008) (noting

that because "[p]laintiff's counsel did not challenge the basis for the vocational expert's

testimony and failed to raise any objection to the conduct of the ALJ until now . . . the objections

are forfeited").

Plaintiff also argues the ALJ erred in relying on Dr. Miller's opinion that cannabis use

disorder was her primary mental health disorder.  (Dkt. No. 18 at 25-32.)  However, the ALJ

found Plaintiff had three other severe mental impairments of major depressive disorder, anxiety

disorder, and PTSD, in addition to cannabis use disorder.  (T. at 468.)  Dr. Miller testified the

diagnosis of major depressive disorder is established by the information in Plaintiff's medical records, and that the principal diagnosis is cannabis use disorder, severe. *Id.* at 539-40, 546-47. She based that opinion on Plaintiff's testimony that Dr. Caputo, her primary care physician, was unaware of her cannabis use, and he prescribed her medications for anxiety and depression. *Id.* at 519. Dr. Miller opined that Dr. Caputo's encounter notes confirmed he was unaware of her cannabis use; the records did not support diagnoses of PTSD, ADHD, or social anxiety disorder; and the depression screening forms from his office show she scored a "zero" for depression. *Id.* at 526-27, 539, 547, 876, 881. Dr. Caputo's notes also show Plaintiff, at times, denied anxiety and depression. *Id.* at 774, 779, 795, 881. Additionally, Plaintiff was in group therapy for marijuana use; she had two inpatient stays for treatment related to cannabis substance abuse because she was unable to stop using on her own; and she had a diagnosis of marijuana dependency. *Id.* at 507-08, 521, 540-41, 545, 2027-55. Dr. Miller also opined that marijuana use can cause "amotivational syndrome," and interfere with concentration, attention, and memory. *Id.* at 526. She further stated that on marijuana, Plaintiff would be moderately limited in each mental function category, but later stated Plaintiff would be able to do simple and repetitive tasks, but she'd be off task 20% of the workday when using marijuana. *Id.* at 548-49, 551. The ALJ afforded great weight to Dr. Miller's opinion regarding Plaintiff's marijuana use and dependence, and its effects on the Plaintiff's mental functioning in regard to being off task when using marijuana, which the record shows Plaintiff used daily. *Id.* at 475, 2031, 2261.

When not considering Plaintiff's marijuana use, the ALJ found the off-task limitation would not apply. *Id.* at 475. The ALJ based this finding on Dr. Miller's opinion that Plaintiff's treatment providers were not fully aware of her marijuana use, which is substantiated in the record. *Id.* at 476; *see, e.g.*, 358-64 (PA Amanda Abrams' records); 772-835, 858-84, 1752-67

(Dr. Caputo's records).  Additionally, the ALJ pointed out that other medical records show marijuana was Plaintiff's primary substance of choice, which she used daily, and cannabis use disorder, as noted above, was one of her diagnoses.  *Id.* at 410, 1745, 2027, 2261.

Plaintiff also contends the ALJ erred in crediting Dr. Miller's opinion because she does not meet the criteria for cannabis use disorder; outside publications regarding the use of marijuana cited by Plaintiff do not support Dr. Miller's opinions; and Plaintiff only engaged in inpatient substance abuse treatment because she would otherwise lose her public benefits.  (Dkt. No. 18 at 26-32.)  The Court finds these arguments unpersuasive.  Initially, as noted above, it is undisputed that Plaintiff did not object to Dr. Miller testifying as an expert.  (T. at 517.)  Plaintiff did cross-examine Dr. Miller at the hearing, but did not ask her about the criteria for cannabis use disorder.  *See id.* at 516-55.  However, as explained above, Dr. Miller supported her opinions by references to the record and Plaintiff's treatment throughout the relevant time period.  *Id.* Additionally, the record is clear that while in treatment, Plaintiff was diagnosed with marijuana dependence, and admitted that her substance abuse negatively affected most major life areas.  *Id.* at 2053, 2038.  Dr. Miller also opined Plaintiff qualified for inpatient treatment because of her substance abuse, and she was not admitted simply because she needed to keep her public benefits.  *Id.* at 541.  Plaintiff told her providers she regularly used marijuana "throughout her life" with only a six-to-eight month period of abstinence in 2016 and her life improved during this period, although she began to use it again to cope with responsibilities of everyday life.  *Id.* at 2031.  Plaintiff's claim that her psychiatric symptoms persisted even when she was using is not supported by the record, nor contradicted by Dr. Miller's opinions.  (Dkt. No. 18 at 30.)  Thus, the Court finds the weight assigned by the ALJ to Dr. Miller's opinions is supported by substantial evidence.

### f.  Cherie Crowningshield

Lastly, with regard to opinions about Plaintiff's mental limitations, she argues in two sentences that the ALJ "erred by giving weight to the opinion of Cherie Crowningshield that Carol Cole could work.  Ms. Crowningshield is not a medical source."  (Dkt. No. 18 at 32.) However, the ALJ clearly identified Ms. Crowningshield as a "care coordinator" and clearly noted that her statement indicating Plaintiff "could gain employment" was "not a function by function medical assessment" but it "tends to corroborate" other medical assessments that support the RFC.  (T. at 474; *see also id*. at 1796.)  The ALJ did not assign any specific weight to this statement, but the ALJ may certainly consider all evidence in the record in formulating the RFC.  *See, e.g.*, *Vincent F. v. Comm'r of Soc. Sec.*, No. 1:17-cv-446 (TWD), 2018 WL 4471525, at *7 (N.D.N.Y. Sept. 18, 2018) (finding that ALJ properly contrasted medical opinion with other evidence).  Accordingly, Plaintiff's argument is unavailing.

### g.  Herbert Savel, M.D.

Plaintiff argues in conclusory fashion the ALJ erred in not including the physical limitations opined by Dr. Savel who treated Plaintiff in late 2016 and early 2017.  (Dkt. No. 18 at 35; *see also* T. at 837-55.)  She offers no other information to support this one sentence argument.  Dr. Savel provided an opinion that Plaintiff had no limitations in sitting, seeing, hearing, speaking, and using her hands, but she was moderately limited in walking, standing, lifting, carrying, pushing, pulling and bending, and very limited in stairs or other climbing due to COPD and shortness of breath.  (T. at 417.)  The RFC provides for a restriction from concentrated exposure to pollutants and temperature extremes for Plaintiff's asthma related limitations.  *Id.* at 469, 475.  The ALJ specifically noted there was nothing in the record to

substantiate the exertional, postural, and manipulative limitations opined by Dr. Savel. *Id.* at 470. He noted Plaintiff had no emergency room visits or hospitalization due to asthma. *Id.*

Indeed, the record shows many treatment notes where Plaintiff had normal breath sounds and ambulated normally. For example, in January 2016, she reported no shortness of breath or wheezing, she ambulated normally, and her lung and breath sounds were normal. *Id.* at 363. In early February 2016, Plaintiff reported no shortness of breath or wheezing, her lung and breath sounds were noted to be normal, she had a normal gait and station, and the "get up and go" and balance tests were normal. *Id.* at 361. She had some expiratory wheezing on February 22, 2016, with acute bronchitis, but she was ambulating normally; she had no wheezing, had normal breath sounds, and ambulated normally on February 25, 2016. *Id.* at 358-60. The ALJ pointed out Plaintiff's pulmonary function tests in November 2016 revealed a moderate obstruction, but the forced expiratory volume and the forced vital capacity values were well above the listing level. *Id.* at 471, 849, 850. Dr. Savel repeatedly noted in 2016 and 2017 that Plaintiff's lungs were clear, albeit with decreased breath sounds, but her back, extremities, and neurological exams were normal throughout his treatment of her. *Id.* at 839-45. Plaintiff's asthma/COPD are described as stable with inhaler use. *Id.* at 786. Plaintiff herself denied any respiratory complaints just prior to the last date insured. *Id.* at 866. Thus, the Court finds substantial evidence supports the ALJ's decision not to "afford any significant weight" to Dr. Savel's limitations related to Plaintiff's asthma/COPD. *Id.* at 470.

### h.  Other Evidence

Moreover, as noted above, a review of the ALJ's decision and the administrative record shows the ALJ also relied on evidence of Plaintiff's wide range of daily activities. Plaintiff cooked, cleaned, shopped, walked, went outside daily, cared for pets, managed her money,

drove, attended church, occasionally socialized, read, and watched TV.  *Id.* at 241-43, 265, 409, 470, 512-13, 1804, 1807.

### i. ALJ Properly Considered All Evidence

Overall, a review of the ALJ's written decision demonstrates he considered all of the medical evidence in accordance with the appropriate legal standards and made reasonable determinations supported by substantial evidence.  *See Micheli v. Astrue*, 501 F. App'x at 29.  It is ultimately the ALJ's responsibility to choose between medical opinions and other evidence to piece together an overall assessment, and a mechanical recitation of the weighing criteria found in the Regulations is unnecessary as long as the record reflects that he properly applied the substance of those rules.  *See, e.g.*, *Suarez v. Colvin*, 102 F. Supp. 3d 552, 574 (S.D.N.Y. 2015).  Here, the ALJ engaged in a thorough, narrative discussion of the extensive record before discussing the reasoning behind his assignment of weight to the medical sources in the record.  *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (holding that "the opinions of non-examining sources [can] override treating source's opinions provided they are supported by evidence in the record"); *accord Suttles v. Colvin*, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order) (holding that it was not erroneous for the ALJ to give great weight to consultative examiner's opinion because it was consistent with record evidence).

Accordingly, the Court finds the ALJ articulated sufficiently good reasons for the weight afforded to all of the medical opinions.  As noted, the ALJ was responsible for reviewing all of the medical and other evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole.  *See Bliss v. Colvin*, No. 13-cv-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such.");

*accord Petell v. Comm'r of Soc. Sec.*, No. 12-cv-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014); *see also Vincent F.*, 2018 WL 4471525, at *7 (ALJ properly contrasted medical opinion with other evidence).  "In general, under the substantial evidence standard of review, it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position . . . plaintiff must [instead] show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record."  *Jonathan S. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1177, 2022 WL 44700, at *6 (W.D.N.Y. Jan. 5, 2022).  In this case, Plaintiff has not made such a showing.

Plaintiff also maintains the ALJ "failed to recontact . . . treatment providers for clarification."  (Dkt. No. 18 at 24.)  However, there is no obligation to recontact a treating physician where the evidence of record is "adequate to permit the ALJ to make a disability determination."  *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010) (citing *Perez v. Chater*, 77 F.3d 41, 47-48 (2d Cir. 1996)); *see also John Q. v. Comm'r of Soc. Sec.*, No. 1:19-cv-1249, 2021 WL 1578297, at *10 (W.D.N.Y. Apr. 22, 2021) ("the ALJ is under no duty to obtain additional evidence from a treating source or ask for clarification when declining to give controlling weight to a treating source's opinion."); *see, e.g.*, *Teresa L. v. Comm'r of Soc. Sec.*, No. 1:19-cv-682, 2020 WL 6875254, at *7 (W.D.N.Y. Nov. 23, 2020) (ALJ did not err "in failing to contact [treating physician] for a clarification of inconsistencies in his opinion and elaboration in the parts of the opinion that were not supported").  The ALJ's decision does not indicate he did not have sufficient evidence to determine whether Plaintiff was disabled and his reasonable explanations that the medical opinions of treating providers were not supported by the record did not require him to recontact any providers for further information.

Furthermore, as a general matter, moderate limitations in mental functioning are not an impediment to the ability to perform gainful activity, particularly when an RFC has already limited a claimant to unskilled and/or low-stress work. *See Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *see Ridley G. v. Comm'r of Soc. Sec.*, No. 20-cv-773, 2021 WL 4307507, at *5, 8-9 (N.D.N.Y. Sept. 22, 2021) (upholding RFC for low-stress work where unremarkable examination findings, opinion evidence, and the plaintiff's ability to perform various activities supported no more than moderate mental limitations); *see also Melisa G. v. Berryhill*, No. 3:18-cv-508 (DJS), 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) (holding moderate limitations are not prohibitive of performing unskilled work); *see, e.g.*, *Tamara M. v. Saul*, No. 3:19-cv-1138 (CFH), 2021 WL 1198359, at *11 (N.D.N.Y. Mar. 30, 2021) (finding no error by ALJ in declining to include limitations to being off-task and/or attendance in RFC determination, where substantial evidence supported the ALJ's assignment of weight and rejection of treating physician's restrictive limitations).

Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those portions of the medical opinions deemed most consistent with Plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all the evidence available to make an RFC finding consistent with the record as a whole).

In light of the foregoing, the ALJ's decision demonstrates appropriate consideration of all of the opinions considering treatment notes, the longitudinal medical record, and Plaintiff's testimony and information she conveyed to her providers. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (finding the ALJ properly considered treating source opinion where the opined limitations were inconsistent with the doctor's own treatment notes and plaintiff's self-reported activities of daily living); *Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (finding no error where ALJ discounted treating source opinion that was inconsistent with treatment notes, other medical opinion evidence, and reported activities). In short, the Court does not find any reversible error in the ALJ's evaluation of the various medical opinions. As such, remand is not required on this basis.

### 3.  Obesity

Plaintiff contends the ALJ erred in not discussing her obesity or including any limitations related to it in the RFC. (Dkt. No. 18 at 35-36.) The Court disagrees. Obesity is not in and of itself a disability. *Cruz v. Barnhart*, No. 04-cv-9011, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006) (citing SSR 02-1p, 2000 WL 628049 (S.S.A. 2002)). Nevertheless, SSR 02-1p provides that a listing is met "if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1p, 2000 WL 628049, at *5. However, "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. . . . We will evaluate each case based on the information in the case record." *Id.* at *6. "[T]here is no reason why the presence of obesity should by itself create a special duty to develop the record" where the plaintiff did not list obesity as a disabling impairment and the medical testimony and

32

evidence before the agency, which included repeated references to the plaintiff's height and weight, were sufficient to enable the ALJ to be assured that the plaintiff's obesity had been considered by the medical sources.  *See Cruz*, 2006 WL 1228581 at *9, 15.

Here, Plaintiff did not claim obesity in her application, nor at either of her hearings.  (T. at 100-15, 220, 488-565.)  Medical records during the relevant time period repeatedly reference Plaintiff's height and weight.  *See, e.g.*, *id*. at 358-59, 361, 363, 774, 779, 785, 795, 800, 804, 809, 813, 817, 821, 825, 829, 834, 839-45, 881.  Additionally, Plaintiff has not shown how her obesity further limited her functioning.  Accordingly, the ALJ did not err in failing to discuss her obesity, and even if he did, any error was harmless.  *White v. Berryhill*, 753 F. App'x 80, 81 (2d Cir. 2019) ("[B]ecause White never specified how his obesity further limited his functioning, any error on the ALJ's part was harmless.").

### 4.  The ALJ's Consideration of Plaintiff's Subjective Complaints

Plaintiff argues the ALJ erred in not crediting Plaintiff's testimony regarding her limitations.  (Dkt. No. 18 at 32-35.)  Plaintiff claims she was forthcoming with her treatment providers, and her mental health treatment and her need for medications were not properly considered.  *Id.*  She argues she had a good work record, and had to leave work because of her disabilities.  *Id.* at 34.  She asserts the ALJ erred because he did not sufficiently explain his credibility determination.  *Id.* at 35.  For reasons discussed herein, the Court finds the ALJ properly evaluated Plaintiff's report of symptoms, and substantial evidence supports his determination that Plaintiff has the RFC to perform a full range of work at all exertional levels limited to simple, unskilled, low stress-work, and avoidance of cold and irritants.

The Court's review of the record does not support Plaintiff's arguments that the ALJ failed to properly consider Plaintiff's complaints.  As to Plaintiff's physical limitations, the ALJ

reviewed her subjective complaints, but Plaintiff did not attribute any impairment to her physical limitations.  (*See, e.g.,* T. at 107-10, 245-46.)  He considered the medical treatment reports, which did not show limitations in her physical abilities other than wheezing in the context of acute bronchitis.  *Id.* at 470-71; *see also id.* at 360.  She had no difficulties walking, and skeletal and neurologic exams were normal.  *Id.* at 359, 361, 363, 839-45.

The ALJ found Plaintiff's mental impairments could reasonably be expected to produce her symptoms, but in the absence of substance abuse, her alleged limitations were inconsistent with the record.  *Id*. at 476-77.  The ALJ cited the two-part standard governing the analysis of subjective complaints.  *Id*. at 469.  He discussed Plaintiff's allegations regarding her limitations, including the effects of medication, and any aggravating factors.  *Id*.  Although the ALJ recognized that Plaintiff's medically determinable impairments could cause her symptoms, he found her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence, non-medical evidence, and other evidence in the record.  *Id*.

Notwithstanding Plaintiff's arguments, the Court finds no basis to disturb the ALJ's evaluation of her subjective complaints, which is supported by record-based explanations throughout the ALJ's written decision.  *See Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) (A court may not "second-guess" the ALJ's decision to discount a claimant's statements about her symptoms "where the ALJ identified specific record-based reasons for his ruling[.]").  "It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms."  *Chicocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quotation omitted).

The ALJ considered Plaintiff's allegations that she could not work due to her depression and anxiety.  He considered that she had a solid work history, but the record belied her statements that she stopped working because of her mental impairments.  (T. at 470.)  She reported to health professionals that she stopped working because she had to relocate or was laid off.  *Id.* at 1743, 2036.  The ALJ also noted her various activities as reported by Plaintiff supported his determination that her alleged symptoms and limitations did not appear substantiated or corroborated by the evidence of record.  *See* 20 C.F.R. §§ 404.1529(c)(3)(i); 416.929(c)(3)(i) ("Factors relevant to your symptoms" include "[y]our daily activities"); *see also* T. at 241-43, 265, 409, 470, 512-13, 1804, 1807 (Plaintiff's varied activities).

As reviewed by the ALJ, and the Court agrees, objective clinical findings likewise do not support Plaintiff's claimed limitations.  (T. at 471-74.)  *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect of those symptoms.").  Although she sometimes appeared anxious and/or tearful at examinations, Plaintiff appeared cooperative, and related adequately to consultative examiner Dr. Mount; and she was fairly groomed and dressed casually.  (T. at 408.)  She made appropriate eye contact with Dr. Mount and exhibited normal posture and motor behavior.  *Id*.  Her speech was fluent, clear, and monotonous, and she demonstrated adequate expressive and receptive language skills.  *Id*.

A mental status examination of Plaintiff by Dr. Rapoport showed she had an anxious mood, but was cooperative.  *Id.* at 2277.  The remaining mental exam was entirely within normal limits, and he specifically noted her memory and concentration were adequate, and her thought processes were goal directed, relevant, and coherent.  *Id.*

As noted above, other relevant treatment notes prior to the last date insured repeatedly reflected Plaintiff had largely normal clinical findings on mental status exams, including exams where she reported anxiety, depression and/or difficulty concentrating. *See, e.g.*, *id*. at 360, 361, 363 (Ticonderoga Health Center/Amanda Abrams, P.A.); 390, 395, 403, 1176, 1178, 1182, 1187, 1191, 1198, 1204, 1230, 1245, 1250, 1255, 1260, 1265, 1275, 1284, 1457, 1462, 1467, 1472, 1478, 1483, 1488, 1493, 1498, 1503, 1508, 1513, 1523, 1528, 1533, 1720, 1725 (Essex County Mental Health mini-mental status exams); 775, 780, 786, 791, 795, 801, 813, 817, 821, 825, 829, 877, 1760 (Westport Health Center/Pasquilino Caputo, M.D.); 774, 779, 795, 881 (denies anxiety and depression Westport Health Center/Pasquilino Caputo, M.D.); 2037 (normal mental status except impaired judgment on admission to St. Lawrence Addiction Center); 2054 (pleasant mood and stable on discharge from the St. Lawrence Addiction Center); 2187-88 (cooperative, thoughts and perceptions coherent without delusions, intact cognition and judgment, fair insight on discharge from Westchester Medical Center).  Considering her many normal mental examination findings and other wide-ranging daily activities, the ALJ properly discounted Plaintiff's allegations overall.  *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 113 (2d Cir. 2010) (summary order) ("Although plaintiff points to a handful of purported inaccuracies in the ALJ's description of plaintiff's activities, none of these inaccuracies cut against, or have any bearing on, the ALJ's ultimate conclusion with respect to plaintiff's credibility.").

Therefore, the Court finds no error with the ALJ's determination that Plaintiff's many normal mental examinations and wide-ranging daily activities did not support her subjective complaints of disabling mental health limitations.  *See Mideczky v. Colvin*, No. 5:15-cv-0531 (GTS), 2016 WL 4402031, at *10 (N.D.N.Y. Aug. 18, 2016) (finding ALJ properly discounted plaintiff's allegations of mental limitations given "[p]laintiff's normal mental status

examinations and broad range of daily activities," including her ability to "prepare simple meals, perform some cleaning, go shopping, watch television," and "drive a motor vehicle").

While Plaintiff argues the record contains no evidence to show that Plaintiff malingered or was "not a credible reporter of the limitations caused by her anxiety and depression," (Dkt. No. 18 at 34), the Court finds the ALJ appropriately determined her complaints were inconsistent with her activities and mental health examination findings as noted in the record. *See* SSR 16-3p, 2017 WL 5180304, at *8.  The "ALJ 'is not required to accept the claimant's subjective complaints without question,'" rather, he has the responsibility to analyze Plaintiff's subjective complaints considering the record as a whole.  *Landis P. v. Comm'r of Soc. Sec.*, No. 8:17-cv-681, 2020 WL 2770434, at *14 (N.D.N.Y. May 28, 2020) ("The ALJ 'is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record.'") (citing *Barry*, 606 F. App'x at 622-23).

Plaintiff's challenges to the ALJ's RFC determination regarding the opinion evidence and her subjective complaints are premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about Plaintiff's functional limitations.  This Court will not reweigh the evidence presented to the ALJ.  *See Warren v. Comm'r of Soc.* Sec., No. 3:15-cv-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *rep. & rec.*

*adopted*, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126,

133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.")

(citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

      Based on the foregoing, the Court finds the ALJ properly considered Plaintiff's

subjective complaints, applied correct legal standards, and the RFC determination was supported

by substantial evidence.  Accordingly, remand is not required on this basis.

### C.    New and Material Evidence

#### 1.  Legal Standard

      In deciding whether to remand a case, the court may consider new evidence if it is

material, as long as the claimant demonstrates good cause for failing to present the evidence

earlier.  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 119 n.1 (2d Cir. 1998) (citing *Lisa v. Sec'y*

*of Dep't of Health & Human Servs.*, 940 F.2d 40 (2d Cir. 1991)); 42 U.S.C. § 405(g).  Material

evidence is "relevant to the claimant's condition during the time period for which benefits were

denied."  *Id*.  This includes test results conducted after the SSA concluded its review that

provided an explanation for claimant's health problems in the time period for which benefits

were denied.  *Id.*  (citations omitted).  The Second Circuit has summarized a three-pronged

requirement as follows:

> [A]n appellant must show that the proffered evidence is (1) "'new'
> and not merely cumulative of what is already in the record,"
> *Szubak v. Secretary of Health & Human Servs.*, 745 F.2d 831, 833
> (3d Cir. 1984), and that it is (2) material, that is, both relevant to
> the claimant's condition during the time period for which benefits
> were denied and probative.  *See Cutler v. Weinberger*, 516 F.2d
> 1282, 1285 (2d Cir. 1975).  The concept of materiality requires, in
> addition, a reasonable possibility that the new evidence would have
> influenced the Secretary to decide claimant's application
> differently.  *See Szubak*, 745 F.2d at 833; *Chaney v. Schweiker*,
> 659 F.2d 676, 679 (5th Cir. 1981).  Finally, claimant must show
> (3) good cause for her failure to present the evidence earlier.  *See*

> *Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985) (good cause
> shown where new diagnosis was based on recent neurological
> evaluation and assessment of response to medication required
> observation period).

*Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (citing *Tirado v. Bowen,* 842 F.2d 595, 597 (2d

Cir. 1988)).

### 2.  Application

Plaintiff submits records from St. Joseph's Addiction Treatment and Recovery Centers

consisting of a "Substance Abuse Pre-Assessment For Temporary Assistance Applicants and

Recipients" form.  (Dkt. No. 18, Addendum A, 2281-2291.)  The form, dated August 31, 2021,

contains a series of questions Plaintiff answered, and it is signed by Outpatient Counselor

Chelsea McDonald.  *Id.*  There is also a letter from Counselor McDonald dated September 28,

2021, indicating that Plaintiff was not recommended for treatment per "our treatment team." *Id.*

at 2280.  Plaintiff posits this evidence is new because it post-dates the ALJ decision at issue

dated July 27, 2021, and it is material because it is "retrospective evidence that [Plaintiff] did not

suffer from cannabis use disorder prior to the date of the decision." (Dkt. No. 18 at 37.)  Plaintiff

also argues it is relevant to her "credibility and the opinion of medical expert Dr. Miller." *Id.*

The Court disagrees.

First, this evidence is not new, but rather cumulative of what is already in the record and

therefore does not meet the first requirement of the three-prong test for such evidence to be

considered by the agency. *Jones*, 949 F.2d at 60.  This additional evidence shows that in August

of 2021, Plaintiff was using marijuana three times per week.  (Dkt. No. 18, Addendum A, at

2286.)  The ALJ already considered Plaintiff had reduced her marijuana use as of January 2021.

(T. at 476, citing comparison of T. at 2031 (daily use of 2 grams in December 2018), and T. at

1745 ("cut back on use" to "three puffs a day" as of January 2021).)  Second, the evidence is also

not material because it is not relevant to the period at issue which ended with Plaintiff's last date insured on December 31, 2019, approximately one and a half years before the ALJ's decision, and one year and eight months before the date of the letter indicating Plaintiff was not recommended for substance abuse treatment.  (Dkt. No. 18, Addendum A, at 2280.)  Moreover, there is nothing in the additional record indicating that it relates back to the relevant time period. *Id.*  Accordingly, remand is not required on this basis.

**VI.    CONCLUSION**

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court finds the ALJ properly applied the correct legal standards and considered all of the evidence of record.  The ALJ's findings are supported by substantial evidence.  Accordingly, the Court finds no error.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and it is further

**ORDERED** the Clerk of Court shall enter Judgment and close this case.

Dated: March 28, 2023
           Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge